# In the United States District Court
## for the Southern District of Georgia
### Brunswick Division

LEE ANDREW JACKSON,

    Plaintiff,

    v.

GLYNN COUNTY, GEORGIA; WAYNE
BENNETT; TRAVIS SMITH and SHAWN
DAVIES,

    Defendants.

CV 214-42

## ORDER

Pending before the Court is Defendants' Glynn County, Georgia ("Glynn County"), Wayne Bennett ("Bennett"), Travis Smith ("Smith")[1] and Shawn Davies ("Davies") (collectively, "Defendants") Motion for Summary Judgment (Dkt. No. 22). The motion has been fully briefed and is ripe for decision. For the reasons stated below, Defendants' Motion is **GRANTED**.

### Evidence

As an initial matter, the Court will dispose of the issue presented by the Affidavit of Plaintiff Lee Andrew Jackson ("Plaintiff") ("Affidavit"), dkt. no. 25, pp. 20-23, which was

---

[1] The Court notes that Plaintiff's claims as to Smith were dismissed without prejudice on October 17, 2014, because Plaintiff failed to timely serve him. See Dkt. No. 9.

called into question by defense counsel's Reply Brief. Dkt. No. 26, pp. 1-6. Specifically, defense counsel argues that the Affidavit is inadmissible and should not be considered evidence because (1) the Affidavit is not properly notarized and (2) the Affidavit contradicts, without explanation, Plaintiff's Deposition Testimony.

As to the procedural issues regarding the Affidavit, the Court first notes that affidavits that are not properly notarized can still be considered evidence, pursuant to 28 U.S.C. § 1746. That code section, which governs unsworn declarations under penalty of perjury, states:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

28 U.S.C. § 1746.

On October 5, 2015, Plaintiff filed his Affidavit, which states, in relevant part:

> Personally, before the undersigned officer duly authorized by Georgia law to administer oaths, appeared LEE ANDREW JACKSON who, after first having been duly sworn, deposes and says on oath as follows: . . . The facts set forth herein are based upon my personal knowledge.
> FURTHER THE AFFIANT SAYETH NAUGHT, on this 2nd day of October, 2015.

Dkt. No. 25, pp. 20, 22-23. The Affidavit was then signed and dated by Plaintiff. Id. at p. 23. Immediately below Plaintiff's signature is the notarial certification, which the Court notes was signed by counsel for Plaintiff and lacks a notarial seal. Id. Defense counsel argues that the Affidavit cannot be considered because it was not properly notarized. Such arguments, however, are incorrect because the Affidavit qualifies as an unsworn declaration.

The Court notes that "there are two statements that are essential to a proper verification under § 1746: (i) an assertion that the facts are true and correct; and (ii) an averment that the first assertion is made under penalty of perjury." U.S. v. 8 Gilcrease Ln., 587 F. Supp. 2d 133, 139 (D.D.C. 2008) (citing Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988)). Section 1746 sets forth a flexible standard. The words need only "substantially" conform to those

suggested by the code section. Id. Here, Plaintiff indicated that the statements in the Affidavit were "based upon [his] personal knowledge." Dkt. No. 25, p. 22. That suffices as a confirmation that the words in the Affidavit are "true and correct." Moreover, Plaintiff made the statements in his Affidavit after being "duly sworn." Id. at p. 20. Additionally, Plaintiff testified that his statements were true "under penalty of perjury." Therefore, the Affidavit substantially conforms to Section 1746 and properly qualifies as an unsworn declaration. 28 U.S.C. § 1746.

Defendants next argue that the Affidavit "is a sham," arguing that Plaintiff "offers no explanation for the eleventh-hour change of his narrative." Dkt. No. 26, p. 6. The unsworn declaration may not be considered evidence in the instant litigation. Specifically, the declaration disputes Plaintiff's deposition testimony without explanation. See Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984) (not entering into evidence affidavit that contradicted deposition testimony with no explanation). On the other hand, "[e]very discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence.'" Brantley v. Ferrell Elec., Inc., 112 F. Supp. 3d 1348, 1355 (S.D. Ga. 2015) (citing Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986)). An inherent inconsistency must exist

between an affidavit and the deposition before the affidavit can be disregarded. Id. at 954. Such a discrepancy exists in this case, which warrants exclusion of Plaintiff's affidavit.

Plaintiff, while describing the events that caused his back injury during his Deposition on July 30, 2015, testified as follows:

> Q: I believe in your Complaint you said that the Defendant, Travis Smith, grabbed you around your torso and lifted you out of your wheelchair. Does that ring any bells that Officer Smith was the one trying to pick you up?
>
> A: That's the one that held me around my back? Around my waist?
>
> Q: That's what you said in your Complaint. It says, 'Defendant, Travis Smith, grabbed the plaintiff around his torso tightly and lifted him from the wheelchair in which he was sitting.'
>
> A: Then the other one must have been holding my wheelchair . . . .

Dkt. No. 23-3, 29:13-25.

> A: I said, 'You're hurting me.' And they pulled me back over. And I think the other fellow grabbed up under my arm. I know when I was coming back over, two of them were holding me, but it was one at first . . . .
>
> Q: You said one of them was holding you at first and then at the end two of them were holding you? So maybe one of them

picked you up and another one helped
him put you back down?

A:    Helped put me back in my chair, yes.

Id. at 32:21-33:8.

Q:    Officer Smith picked you up and then
whoever the other officer in the room
helped Officer Smith lower you back
into your chair?

A:    I think so.   I believe that's the way
it was . . . .

Id. at 33:13-17.

Q:    [W]hen did you feel something go wrong
with your back?

A:    When he first picked me up out of my
chair, and when my bottom left the
chair, that's when it started popping
and cracking.

Q:    Okay.    So when officer Smith was
lifting you up?

A:    Yes.

Q:    You felt it almost immediately?

A:    Yes

Q:    Okay.   So by the time they started to
lower you back into your chair you felt
like the damage was done at that point?

A:    It had been done.

Id. at 55:13-56:1.

By October 2, 2015, the date of Plaintiff's Affidavit,

Plaintiff's memory of the event causing his injury completely

changed:

Shawn Davies and Travis Smith told me that they would lift me up from my wheelchair in the shower. I protested to them that was not safe. The officers said, 'we can handle this,' or words to that effect. Dkt. No. 23-4, p. 21, ¶ 3.

Travis Smith and Shawn Davies maneuvered me into the shower. I was physically lifted out of my wheelchair. The force used to lift me was significant, since I weighed in excess of 250 lbs at that time and I am not able to use my lower extremities to assist in that sort of movement in any way. Shawn Davies was standing beside or behind me and Travis Smith was in front of me while I was being lifted. I noticed immediate pain in my back during this procedure. Some of my injury that I suffered in this event happened while I was being lifted up, and some occurred while I was being put back into my wheelchair. Shawn Davies and Travis Smith both participated in this procedure.

Id. at ¶ 4.

The following conclusions flow from Plaintiff's deposition. First, Davies did not lift Plaintiff from his wheelchair. Dkt. No. 23-3, 29:13-25. Second, Davies grabbed under Plaintiff's arm. Id. at 32:24-33:3. Third, Davies only helped to lower Plaintiff back into his wheelchair. Id. at 32:21-33:8, 33:13-17. Fourth, Plaintiff was almost immediately injured when Smith attempted to lift him out of his wheelchair. Id. at 55:13-56:1. Finally, the injury occurred before Plaintiff was lowered back into his wheelchair. Id. at 55:23-56:1. These conclusions, drawn directly from Plaintiff's Deposition Testimony, are

inherently inconsistent with the statements made in Plaintiff's
Affidavit.

Plaintiff also testified that he could not remember certain
details of the incident, namely: (1) how many nights he was
confined in the Glynn County Detention Center ("the facility"),
id. at 20:12-14; (2) what kind of chair was placed in the
shower, id. at 26:20-27:2; (3) how the injury occurred in the
area where he was to shower, id. at 29:2-12, 30:5-7, 30:22-25,
33:16-20; (4) the name of the prison doctor, id. at 35:25-36:2;
and (5) the period of time that elapsed between the injury and
the prison doctor's visit, id. at 36:9-10. However, without
explanation Plaintiff now testifies that he does in fact
remember such details, in direct contradiction to his previous
testimony. The Court notes that Plaintiff has not provided an
explanation for the swift change in his testimony between his
July 30, 2015 Deposition and his October 2, 2015 Affidavit. An
unsworn declaration's sole purpose cannot be to create a
material issue of fact where there previously was none. See
Miller v. Shaner Hotel Grp. Ltd. P'ship, 999 F. Supp. 2d 1298,
1303-04 (S.D. Ga. 2014) (explaining that where a plaintiff
testified that she did not fall on steps, and then declared in
her affidavit the opposite, the court concluded that "[i]t is
plain that this revisionist affidavit is a sham designed to
avoid summary judgment. The Court does not consider this

declaration in this particular affidavit to be a sham in its entirety. The discrepancies and variations noted above affect the weight rather than the admissibility of the evidence, were this case to reach a jury.

### Factual Background

On Friday, March 23, 2012, Plaintiff was arrested on Jekyll Island for driving under the influence of alcohol. Dkt. No. 23-3, 16:17-17:9; Dkt. No. 23-4, p. 3. Following his arrest, Plaintiff was immediately transported to the facility by the arresting officer. Dkt. No. 23-3, 18:6-8. Plaintiff is paraplegic as a result of a 1988 traffic accident. He was permitted to remain in his own wheelchair as he waited to be processed into the facility. Id. at 22:13-15. Plaintiff was not processed until Saturday morning. Id. at 22:16-17, 24:18-20. Plaintiff was then required to take a shower before entering the general population. Id. at 25:11-17. On Saturday, March 24, 2012, at approximately 10:30 a.m., Officers Smith and Davies wheeled Plaintiff to the shower used for detainees. Id. at 26:9-13; Dkt. No. 23-4, p. 5. The shower stall contained a chair for Plaintiff's use. Dkt. No. 23-3, 25:18-26:8. Plaintiff could not remember what type of chair was placed in the shower for his use. Id. at 26:20-27:2.

Smith told Plaintiff that he was going to lift Plaintiff from his wheelchair and move him to the shower chair. Dkt. No.

23-4, p. 5.  Smith alleges that Plaintiff agreed to proceed with his plan.  Id.  Plaintiff neither requested to use a different shower nor objected to being moved into the shower chair.  Dkt. No. 23-3, 26:14-24, 47:24-48:1.  Smith put his arms around Plaintiff's torso and lifted him out of his wheelchair to transfer him to the shower chair.  Id. at 29:13-30:13.  Davies kept the wheelchair in place as Smith lifted Plaintiff.  Id. at 29:24-25.  Almost instantly, Plaintiff "heard the bones start snapping in [his] back.  And [he] said, 'Sir, it's hurting. Hurting me.  Put me down.'"  Id. at 30:11-13, 55:11-20.

Smith immediately began to lower Plaintiff back into his wheelchair.  Id. at 30:14-18, 31:3-5.  Davies also placed an arm under Plaintiff's arm to steady him.  Id. at 32:24-33:8.  The only physical contact between Plaintiff and Davies occurred when Davies "helped put [Plaintiff] back in [his] chair."  Id. at 33:8, 11-20.  When Davies intervened to help Plaintiff back into his wheelchair, "[the alleged damage] had been done" to Plaintiff's back.  Id. at 55:23-56:1.  Smith and Davies did not make any further attempts to move Plaintiff into the shower stall.  Id. at 34:8-10.  Plaintiff does not allege that Smith and Davies were intentionally trying to hurt him.  Id. at 56:11-15 (stating "they didn't know how to handle a disabled person.").

Smith contacted a supervisor to notify him of the injury. Dkt. No. 23-4, p. 5. The jail doctor checked on Plaintiff following the supervisor's request that the medical officer call him. Id. Plaintiff also requested that a doctor evaluate the injury to his back. Dkt. No. 23-3, 31:15-17. Plaintiff alleges that the doctor did not spend sufficient time with him to properly treat his injury. Id. at 34:17-37:1. Plaintiff maintains that "[i]t was way more than two hours" before the doctor finally treated him. Dkt. No. 23-3, 37:1. Plaintiff testified that "it felt like a long time" before he was seen by the jail doctor because he was "inside of a room and [he couldn't] see outside, [he couldn't] really tell day from night." Id. at 36:5-10.

Defendants maintain that Plaintiff was treated by the jail doctor on the same day of the incident, March 24, 2012. Dkt. No. 23-4, p. 6. Smith's Incident Report indicates that the jail doctor treated Plaintiff at approximately 1:55 p.m. on March 24, 2012, which was about three-and-a-half hours after the incident occurred. Id. at p. 5. Plaintiff disputes that he was seen by the jail doctor "within an hour or two" of the incident, explaining that "it had been a long time . . . [i]t was way more than two hours." Dkt. No. 23-3, 36:15-37:1. Plaintiff's family brought all of his medication to him in the jail, after Plaintiff "told the doctor what [he] was on." Id. at 39:17-23;

Dkt. No. 23-4, p. 8. When Plaintiff's family brought his medicine to the jail, he was permitted to take it, including the hydrocodone that had been prescribed to him for his chronic back pain. Dkt. No. 23-3, 39:17-23, 40:1-3, 40:6-22.

The jail doctor cleared Plaintiff to be released to a jail cell, where he rested "for a few hours" before officers woke him to take a shower. Id. at 49:25-50:6. The officers took Plaintiff to a larger stall for this second attempt, where Plaintiff was able to transfer himself from his wheelchair to the shower and back without any issues. Id. at 50:21-52:6. Although Plaintiff testified that he was released from jail "the next day," he was released on Monday, March 26, 2012. Id. at 20:5-6, 49:25-50:2. Several days after Plaintiff was arrested, he visited his general practitioner, who increased his dosage of hydrocodone, in addition to prescribing Percocet and a short course of physical therapy, as a result of the injury to Plaintiff's back. Dkt. No. 23-3, 40:25-43:4.

## LEGAL STANDARD

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011)

(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Anderson, 477 U.S. at 248). In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick

AO 72A
(Rev. 8/82)

v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).


## DISCUSSION

As an initial matter, the Court notes that Plaintiff alleges that Defendants violated his rights under the Fourth, Eighth, and Fourteenth Amendments. Dkt. No. 1, ¶ 23. At the time of the events in question, Plaintiff was a pretrial detainee. Thus, Plaintiff's claims of mistreatment arising under the Fourth Amendment are properly analyzed pursuant to the Fourteenth Amendment's Due Process Clause. See Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Cruel and Unusual Punishment Clause.").

Similarly, analysis of Plaintiff's alleged Eighth Amendment violation is also properly governed by the Fourteenth Amendment.

See Hale v. Tallapoosa Cty., 50 F.3d 1579, 1582 n.4 (11th Cir. 1995) (explaining that "[b]ecause [the plaintiff] was a detainee and not a prisoner, [], his constitutional rights arise not from the Eighth Amendment, but from the Due Process Clause of the Fourteenth Amendment."). Accordingly, Plaintiff's claims arising under the Fourth and Eighth Amendments fail as a matter of law.

## I. Plaintiff's Claims Arising under 42 U.S.C. § 1983 Fail

Plaintiff alleges that Defendants committed numerous violations under 42 U.S.C. § 1983. Specifically, Plaintiff alleges a number of federal law claims against Davies and Bennett in their official and individual capacities, in addition to seeking to hold Glynn County liable for their actions. See generally Dkt. No. 1. In response, Defendants assert that: (1) they are protected from Plaintiff's federal claims in their official capacity by the immunity offered by the Eleventh Amendment; and (2) qualified immunity protects them from the claims asserted against them in their individual capacities. See generally Dkt. No. 23-1. Below, the Court will address each of Plaintiff's 42 U.S.C. § 1983 claims as they relate to Glynn County, Bennett, and Davies.

### A. Plaintiff's Claim against Glynn County Fails

Plaintiff alleges that Glynn County is liable under § 1983 for the actions taken by Bennett and his employees. Dkt. No. 1,

AO 72A
(Rev. 8/82)

¶ 12.   The Court notes that the liability of a local government,
such as Glynn County, may not be founded upon a theory of
respondeat superior.  Monell v. Dep't of Soc. Servs., 436 U.S.
658, 694 (1978).  Thus, a local government can only be held
liable under § 1983 for acts of one of its officers if the
plaintiff can establish that an official local government custom
or policy was the "moving force" behind the deprivation of a
constitutional right.  Bd. of Cty. Commm'rs v. Brown, 520 U.S.
397, 404 (1997).  In other words, a county is "liable under
§ 1983 only for acts for which [the county] is actually
responsible."  Turquitt v. Jefferson Cty., 137 F.3d 1285, 1287
(11th Cir. 1998).  Here, for Glynn County to be liable for
Bennett and Davies' actions, Plaintiff must "identify a
municipal 'policy' or 'custom' that caused his injury."  Gold v.
City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

    Defendants argue that the "official policy or custom"
analysis is inapplicable in the instant matter because it is
established law in Georgia that counties do not wield any
control over the Georgia sheriff's department.  See Dkt. No. 23-
1, pp. 17-18 (citing Brown v. Dorsey, 276 Ga. App. 851, 855–56
(Ga. Ct. App. 2005)).  Plaintiff, appearing to recognize the
fallibility of his argument, admitted that "Glynn County is not
directly liable for certain acts performed by the Sheriff."
Dkt. No. 25, p. 9.  In an attempt to make up lost ground,

Plaintiff proceeded to argue that Glynn County "is responsible for supplying an adequate jail facility to the Sheriff." Id. In support of this argument, Plaintiff failed to provide this Court with evidence that either: (1) confirms that his injury was the result of a Glynn County custom or policy; or (2) contradicts established precedent that Georgia sheriff's departments operate independently from counties. Thus, there is no evidence by which this Court could hold Glynn County liable for Bennett and Davies' actions with regard to Plaintiff's injury. In light of the above, Glynn County is entitled to Summary Judgment.

## B. Plaintiff's Claims against Bennett Fail

### i. Claims Asserted against Bennett in his Official Capacity

Plaintiff seeks to hold Bennett liable in his official capacity for his violations of 42 U.S.C. § 1983. Dkt. No. 1, ¶ 21. Bennett argues that he is precluded from suit for Plaintiff's claims in his official capacity by reason of the Eleventh Amendment. Dkt. No. 23-1, p. 10. Pertinently, the Eleventh Amendment prohibits the "[j]udicial power of the United States" from reaching "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Supreme Court interprets this language to also prevent suits against a state

brought by its own citizens. <u>Kimel v. Fla. Bd. of Regents</u>, 528 U.S. 62, 73 (2000) ("[F]or over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States."). The State itself need not be named in a suit to receive Eleventh Amendment immunity. The immunity attaches to any agent or instrumentality acting as an "arm of the state." <u>See</u> <u>Manders v. Lee</u>, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc).

A court considers the following factors in determining whether an official acts as an "arm of the state": "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." <u>Manders</u>, 338 F.3d at 1309. Courts determining whether an official acts as an "arm of the state" must do so "in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." <u>Regents</u>, 519 U.S. at 1308. Significantly, the Eleventh Circuit recently applied the <u>Manders</u> factors to determine that a sheriff functions as an "arm of the state" when he establishes "policies at the jail for processing arrestees." <u>Scruggs v. Lee</u>, 256 F. App'x 229, 232 (11th Cir. 2007) (per curiam) (unpublished opinion).

Here, Plaintiff seeks to hold Bennett liable in his official capacity, alleging that he "failed to have adequate policies for bathing inmates confined to wheelchairs, and failed to give training to his subordinate employees as to the safe ways and methods to bath [sic] inmates who suffer from paraplegia." Dkt. No. 1, ¶ 22. Although Plaintiff claims that Bennett should be held liable in his official capacity for these claims, Bennett is precluded from liability because he is protected by the immunity offered by the Eleventh Amendment.

The Eleventh Circuit concluded that a sheriff's "authority and duty to administer the jail in his jurisdiction flows from the State, not [the] County." Manders, 338 F.3d at 1315, 1328 (holding that the sheriff "in his official capacity is an arm of the state, not [the] County, in establishing use-of-force policy at the jail and in training and disciplining his deputies in that regard."); see also Scruggs, 256 F. App'x at 232 (holding that Georgia sheriffs act as an "arm of the state" when they establish "policies at the jail for processing arrestees."); Purcell ex rel. Estate of Morgan v. Toombs Cty, 400 F.3d 1313, 1324-25 (11th Cir. 2005) (holding that Georgia county sheriff acted as an "'arm of [the] state,' rather than [the] county, when promulgating policies and procedures governing conditions of confinement at county jail."); Turquitt v. Jefferson Cty., 137 F.3d 1285, 1289 (11th Cir. 1998) (holding that sheriff acts

AO 72A
(Rev. 8/82)

as an 'arm of the state' regarding "daily operation of the jails" and the "supervision of inmates.").

Here, Plaintiff's claims fall squarely within the realm protected by the Eleventh Amendment. Plaintiff alleges that Bennett failed to properly train his employees regarding the proper methods to bathe disabled detainees. Dkt. No. 1, ¶ 22. Such a procedure, however, falls within Bennett's duty to promulgate policies regarding confinement at the jail. Thus, pursuant to the reasoning set forth in Scruggs, Bennett acted as an "arm of the state" when he established a policy at the facility requiring all detainees to shower prior to entering the general population. Accordingly, the Eleventh Amendment bars all of Plaintiff's claims against Bennett in his official capacity.

### ii. Claims Asserted Against Bennett in his Individual Capacity

Plaintiff seeks to hold Bennett liable in his individual capacity, alleging that he "fail[ed] to provide medical care." Dkt. No. 1, ¶ 21. Deliberate indifference to a pretrial detainee's serious medical needs is a violation of the detainee's Fourteenth Amendment rights. See Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007) (referring to prisoner and Eighth Amendment). In Farmer v. Brennan, the United States Supreme Court held that, in order for a plaintiff

AO 72A
(Rev. 8/82)

to recover for deliberate indifference to serious medical needs, the plaintiff must show that an official "acted or failed to act despite his knowledge of a substantial risk of serious harm." 511 U.S. 825, 842 (1994). In Carroll v. Correctional Medical Services, the Eleventh Circuit held that a constitutional violation is present only where the medical treatment received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. Mere incidents of negligence or malpractice do not rise to the level of constitutional violations." 160 F. App'x 848, 850 (11th Cir. 2005) (quoting Harris v. Thigpen, 941 F.2d 1495, 1050 (11th Cir. 1991)).

The Court in Carroll went on to hold that "[a]n inmate who complains that [a] delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of [the] delay in medical treatment to succeed." Id. (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994), abrogated on other grounds, Hope v. Pelzer, 536 U.S. 730 (2002)). To prove deliberate indifference, a plaintiff must show three things. First, he must show that the detainee had a serious medical need. Id. (citing Bozeman v. Orum, 442 F.3d 1265, 1272 (11th Cir. 2005)). This is an objective inquiry. Id. Second, he must show that the defendant acted with

deliberate indifference to the detainee's serious medical need. Id. (citing Bozeman, 422 F.3d at 1272). This is a subjective inquiry. Id. Third, the plaintiff must show that the defendant's wrongful conduct caused the detainee's injury. Id. (citing Hale, 50 F.3d at 1582).

Here, neither party disputes that Plaintiff was injured while Smith and Davies attempted to bathe him, in accord with established policy. Thus, the Court will focus its attention on the final prongs of the deliberate indifference inquiry. A jury evaluating the facts as presented would find that Bennett was, at most, negligent regarding Plaintiff's medical needs. The Court notes that Smith immediately notified a supervisor that Plaintiff required medical attention after the shower incident. Dkt. No. 23-4, p. 5. Within three-and-a-half hours of the alleged injury, the prison doctor treated Plaintiff. Id. Moreover, Plaintiff has presented no evidence contradicting Defendants' evidence . Given the aforementioned actions, there is no evidence supporting an allegation that Bennett "acted or failed to act" to ensure that Plaintiff received medical attention. Farmer, 511 U.S. at 842.

Although Plaintiff argues that the prison doctor did not spend enough time treating him and that he should have sent him to the hospital, "[t]hat [a plaintiff] may have desired more or a different course of treatment does not amount to a

AO 72A
(Rev. 8/82)

constitutional violation." Case v. Riley, 270 F. App'x 908, 911 (11th Cir. 2008); see also Hamm v. Dekalb Cty., 774 F.2d 1567, 1575 (11th Cir. 1985) (failing to find deliberate indifference to a medical need of plaintiff where plaintiff "received significant medical treatment while at the jail," regardless of the fact that plaintiff "may have desired different modes of treatment."). Additionally, the Court notes that Plaintiff was allowed to call his family to obtain his medication. Dkt. No. 23-3, 39:17—23. Shortly after his medication arrived at the facility, and after the prison doctor was notified of their arrival, Plaintiff was permitted to take his medication. Id. at 40:1—3, 40:6—22. These facts further demonstrate that prison officials did not act with deliberate indifference towards Plaintiff's medical needs; rather, the exact opposite occurred. Thus, Plaintiff cannot support a claim for a constitutional violation on the basis of the facts presented here. Accordingly, summary judgment is appropriate on this claim.[2]

### iii. Bennett Cannot be Held Liable under a Theory of Respondeat Superior, even if Some Violation of Plaintiff's Rights Occurred

---

[2] Although the Court need not address Bennett's qualified immunity defense, the Court does note for the sake of thoroughness that, in Burnette v. Taylor, 533 F.3d 1325, 1333 n.7 (11th Cir. 2008), the Eleventh Circuit held that, even if it were mistaken as to the appropriateness of summary judgment based on the merits of the plaintiff's claims, qualified immunity would apply. Similarly, even if Bennett had not been entitled to summary judgment on the merits of Plaintiff's deliberate indifference claim, he would be entitled to qualified immunity.

Plaintiff alleges that Bennett "failed to have adequate policies for bathing inmates confined to wheelchairs, and failed to give training to his subordinate employees as to the safe ways and methods to bath [sic] inmates who suffer from paraplegia." Dkt. No. 1, ¶ 22. In § 1983 actions, supervisor liability must be based on something more than a theory of respondeat superior. Bryant v. Jones, 575 F.3d 1281, 1299 (11th Cir. 2009); Braddy v. Fla. Dep't of Labor & Emp't Sec., 133 F.3d 797, 801 (11th Cir. 1998). A "causal connection" may be established when the supervisor is well aware of a "history of widespread abuse" and fails to correct the alleged violations. Braddy, 133 F.3d at 802. Constitutional "deprivations that constitute widespread abuse sufficient to notify the supervis[or] must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Id.

Here, Plaintiff does not allege that Bennett personally participated in the shower incident, and the record supports no such inference. Additionally, there is a dearth of evidence showing a causal connection between Bennett's policy and Plaintiff's injury. Although Plaintiff alleged that "Sheriff Bennett has created or allowed to exist a policy where due process rights are routinely violated," such a contention is not sufficient to satisfy the summary judgment standard. Dkt. No. 25, p. 9.

Plaintiff failed to provide any evidence that Bennett tolerated "widespread abuse" in the facility. In fact, Plaintiff admitted in his Deposition that he did not "really know of any other person, [any other] disabled person" who was similarly injured while confined or being processed into the facility. Dkt. No. 23-3, 49:8-9. Moreover, there is a dearth of evidence showing that Bennett had any knowledge that his shower policy was deficient with regard to disabled pretrial detainees.

Plaintiff also alleges that "[p]rior to March 23, 2012, the Defendants Glynn County and Wayne Bennett had knowledge that the jail facilities were not adequate for persons confined to wheel chairs [sic] to safely bath [sic] and shower." Dkt. No. 25, p. 2. This evidence, however, is insufficient to establish that Bennett tolerated known and flagrant violations of his policies.

Plaintiff was able to shower without incident in a different part of the facility later that same day. One deficient bathroom cannot support an allegation that Bennett tolerated widespread abuse in his jail. Plaintiff may not simply rely upon the allegations in his pleadings to oppose Defendants' Motion for Summary Judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Accordingly, Bennett is entitled to Summary Judgment on all of Plaintiff's § 1983 claims against him.

C. **Plaintiff's Claims against Davies Fail**

   i. **Claims Asserted against Davies in his Official Capacity**

Plaintiff sets forth two claims against Davies in his official capacity, alleging that Davies (1) used excessive force and (2) subjected him to cruel and unusual punishment. Dkt. No. 1, ¶ 18. As the Court discussed extensively supra, see § I(B)(i), Plaintiff's claims against Davies in his official capacity are barred by Eleventh Amendment immunity. Davies is an employee of the sheriff, Bennett, and not of the county. See Manders, 338 F.3d at 1311 ("Deputies . . . are employees of the sheriff and not the county."); see also Scruggs, 256 F. App'x at 232 ("As employees of the sheriff, deputies . . . in their official capacities, are also entitled to Eleventh Amendment immunity"). Given that Davies is Bennett's employee and not a county's, Davies is entitled to immunity. Accordingly, all of Plaintiff's federal claims against Davies in his official capacity are barred by the Eleventh Amendment and summary judgment is thus appropriate.

   ii. **Claims Asserted against Davies in his Individual Capacity**

Plaintiff asserts both excessive force and cruel and unusual punishment claims against Davies under § 1983. Dkt. No. 1, ¶ 18. In response, Davies alleges that he is protected from liability under the doctrine of qualified immunity. Dkt. No.

23-1, pp. 9—10. The qualified immunity defense exists to offer "complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When properly applied, the doctrine protects "all but the plainly incompetent or one who is knowingly violating the federal law." Id. (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)).

### a. Davies Acted within the Scope of his Discretionary Authority

To qualify for the protection of the doctrine, a public official must first prove that he was acting within the scope of his discretionary authority at the time the alleged wrongful acts occurred. Terrell v. Smith, 668 F.3d 1244, 1250 (11th Cir. 2012). To determine whether a public official acts within his "discretionary authority," he must show "objective circumstances that would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting Barker v. Norman, 651 F.2d 1107, 1121 (5th Cir. 1981)). In other words, the court must determine "whether the act complained of, if done for a proper purpose,

would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity 'should be determined by the relation of the [injury] complained of to the duties entrusted to the officer.'" Harbert Int'l, Inc. v. James, 157 F.3d 1271, 1282 (11th Cir. 1998) (quoting In re Allen, 106 F.3d 582, 593 (4th Cir. 1997) (quoting Doe v. McMillan, 412 U.S. 306, 319-20 (1973))).

Aiding an inmate to shower, in accord with established policies at the facility, clearly constitutes a discretionary act. There can be no doubt that Davies' action occurred both within the performance of his duties and within the scope of his authority as a law enforcement official. Thus, the burden then shifts to the plaintiff to show that qualified immunity does not apply. Terrell, 668 F.3d at 1250.

### b. There was no Violation of Clearly Established Constitutional Law

In determining whether qualified immunity applies, a court engages in a two-step inquiry, assessing (1) whether the plaintiff alleged facts to establish that the officers violated constitutional rights and (2) whether the right was clearly established. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[3] A constitutional right is clearly established if "a reasonable official would understand that what he is doing violates that

---

[3] Federal courts have discretion in deciding which prong to address first. See Pearson, 555 U.S. at 236.

AO 72A
(Rev. 8/82)

right." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987); <u>see also</u> <u>Post v. City of Fort Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993) ("If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."). Therefore, "if the constitutional right has been clearly established, the plaintiff must demonstrate that a reasonable government actor would have known that what he was doing infringed that right." <u>Chesser v. Sparks</u>, 248 F.3d 1117, 1122 (11th Cir. 2001).

Here, Plaintiff claims that Davies violated his rights in two ways: by (1) using excessive force in requiring him to shower; and (2) subjecting him to cruel and unusual punishment. Dkt. No. 1, ¶ 18. The Court notes, however, that the standard governing each of the alleged violations is the same. <u>See</u> <u>Carter v. Dekalb Cty.</u>, 521 F. App'x 725, 729 (11th Cir. 2013) (per curiam) ("Claims involving the mistreatment of arrestees in custody 'are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners.'" (emphasis added) (quoting <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1490 (11th Cir. 1996))). Accordingly, the Court will jointly address Plaintiff's claims below for the purposes of the qualified immunity analysis. Viewing the facts in the light most favorable to Plaintiff, no reasonable jury could find that

Davies' actions shocked the conscience and thus violated the Fourteenth Amendment. A Fourteenth Amendment claim entails a subjective component and a requirement that actions "shock the conscience." Fennell v. Gilstrap, 559 F.3d 1212, 1217 (11th Cir. 2009) (per curiam). If force is used "maliciously and sadistically to cause harm," then it shocks the conscience, but if it is applied "in a good-faith effort to maintain or restore discipline," then it does not. Id. (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

Courts consider several factors to determine whether an official used excessive force in violation of the Fourteenth Amendment:

> a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of injury inflicted upon the [detainee]; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to temper the severity of a forceful response.

Id. (citing Cockrell v. Sparks, 510 F.3d 1307, 1311 (11th Cir. 2007)). To show an official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and subjective inquiry. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir.2004) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir.2003)). First, the plaintiff must satisfy the objective component by showing that he had a serious medical

AO 72A
(Rev. 8/82)

need. Goebert v. Lee Cty., 510 F.3d 1312, 1326 (11th Cir. 2007). Second, a plaintiff must show that the official acted with deliberate indifference to a serious medical need. Brown, 387 F.3d at 1351. The Court views the facts "as reasonably perceived by [the defendant] on the basis of the facts known to him at the time" and gives a wide range of deference to officials acting to preserve discipline and security. Fennell, 559 F.3d at 1217.

Here, a reasonable jury, viewing the facts as alleged, could not find that Davies either utilized excessive force or subjected Plaintiff to cruel and unusual punishment. Plaintiff alleges that "Davies is liable because he participated in the action which caused a serious injury to [his] back." Dkt. No. 25, p. 8. But Plaintiff's Deposition testimony paints a starkly different account of Davies' involvement in the incident that injured Plaintiff. Indeed, Plaintiff confirmed that Davies was not touching Plaintiff when the injury occurred. Dkt. No. 23-3, 29:13—25. According to Plaintiff, the injury occurred when Smith lifted Plaintiff from his wheelchair. Id. at 55:13—56:1. Plaintiff further testified that the injury occurred almost "immediately" after Smith lifted him. Id. It is clear that Davies was not touching Plaintiff when the injury occurred and that he acted to aid Plaintiff.

AO 72A
(Rev. 8/82)

Davies' placing a hand under Plaintiff's arm to "steady" him _after_ Plaintiff incurred his back injury cannot qualify as force that is "maliciously and sadistically" applied. <u>id</u>. at 32:24-33:8, <u>Fennell</u>, 559 F.3d at 1217. Moreover, such minimal contact cannot support a claim for "unusual or malicious" conduct, much less an allegation of excessive force. <u>Id</u>. The Court notes that there is no evidence that the contact between Plaintiff and Davies bore no malicious intent; rather, the conduct appeared to be the opposite. Plaintiff confirmed that he did not think that either Smith or Davies bore him any ill-will, but that they "didn't know how to handle a disabled person." Dkt. No. 23-3, 56:11-15.

It is evident that the contact between Plaintiff and Davies was minimal, and there is no evidence in the record to support any finding otherwise. Moreover, there is no case law that suggests or establishes that the contact between Plaintiff and Davies is improper, and Plaintiff has not offered evidence to the contrary. Accordingly, Davies is entitled to qualified immunity for Plaintiff's § 1983 excessive force and cruel and unusual punishment claims. Summary judgment is **GRANTED** as to all of Plaintiff's § 1983 claims asserted against Davies in his individual capacity.

**II. Plaintiff's Claims under the Americans with Disabilities Act ("ADA") Fail**

## A.    Plaintiff's ADA Claims against Glynn County Fail

Plaintiff alleges that Glynn County violated the ADA, 42 U.S.C. § 12132. Dkt. No. 1, ¶¶ 25–30. Specifically, Plaintiff alleges that he is a "qualified individual with a disability" and that he is "an individual who without reasonable modifications or the removal of architectural barriers, cannot fully engage in activities protected by the ADA." Dkt. No. 1, ¶ 27. Plaintiff argues that Glynn County was "responsible for supplying an adequate jail facility to the Sheriff [because] [t]he shower for persons not yet admitted into the area where other inmates were held was not adequate for someone in a wheelchair." Dkt. No. 25, p. 9.

Under Title II of the ADA, public entities are prohibited from discriminating against individuals with disabilities or denying them services because of their disabilities. 42 U.S.C. § 12132. To state a claim of discrimination under Title II, a claimant must prove:

> (1) that he is a qualified individual with a disability; and (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bircoll v. Miami-Dade Cty., 480 F.3d 1072, 1083 (11th Cir. 2007). Title II applies solely to "public entities," which

includes "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority . . . ." 42 U.S.C. § 12131(1). The Court notes that state prisons qualify as public entities for the purposes of the ADA. United States v. Georgia, 546 U.S. 151, 154 (2006).

Here, Plaintiff's claim against Glynn County fails because his allegations concern the corrections and/or detention powers of the Sheriff. As discussed extensively supra, see I(B)(i), when the sheriff establishes policies regarding the administration of a jail, his actions are considered state functions, as opposed to county matters. Accordingly, while the facility qualifies as a "public entity" under 42 U.S.C. § 12131(1), Plaintiff cannot hold Glynn County liable because Glynn County exercises no power to implement policies for, or direct the operations of, the facility. See Slaughter V. Dooly Cty., No. 5:06-CV-143, 2007 WL 2908648, at *8 (M.D. Ga. Sept. 28, 2007) (explaining that "plaintiff's ADA claim—failure to provide medical treatment and accommodations—concern state, not county, functions. In carrying out these functions, the sheriff acts as an official of the State, not the County."). Given the above, Plaintiff cannot hold Glynn County liable for the conduct that allegedly violated the ADA. Regardless, Plaintiff presents

AO 72A
(Rev. 8/82)

no evidence that the shower area fails to comply with the ADA. To the contrary, the record reflects that a second shower area existed in the jail facility. The undisputed evidence shows that Plaintiff had no issue utilizing that shower. The record, therefore, indicates that the facility did have a shower that accommodated the Plaintiff. Dkt. No. 23-350:21-52:6. Thus, Summary judgment is appropriate for Plaintiff's ADA claims against Glynn County.

### B. Plaintiff's ADA Claim Against Bennett Fails

To the extent that Plaintiff sets forth a claim against Bennett in his official capacity for violations of the ADA, this claim, too, will fail. As discussed extensively supra, see § I(B)(i), Bennett acted as an "arm of the state" at all times relevant to the Plaintiff's Complaint. The immunity offered by the Eleventh Amendment does not only apply to claims asserted against defendants in their official capacities arising under 42 U.S.C. § 1983. The immunity also applies to ADA claims. See, e.g., Pellitteri v. Prine, 776 F.3d 777, 783 (11th Cir. 2015) (explaining that the sheriff "enjoys Eleventh Amendment immunity against [plaintiff's] wrongful termination claims brought against him in his official capacity under § 1983 and the ADA"); Rylee v. Chapman, 316 F. App'x 901, 905 (11th Cir. 2009) (affirming the sheriff's Eleventh Amendment immunity where a pretrial detainee brought suit alleging that he was denied

reasonable accommodations, thereby violating the ADA). The Eleventh Amendment, however, is not a total shield to liability in the ADA context. Plaintiff is able to overcome Eleventh Amendment immunity to the extent he can establish that a Fourteenth Amendment violation occurred. Georgia, 546 U.S. at 154. Plaintiff has failed, however, to provide any evidence he was discriminated against based upon his disability in violation of the Fourteenth Amendment. Furthermore, the mere occurrence of the incident in this case presents no indicia of discrimination. Given the above, any claims that Bennett, in his official capacity, violated the ADA are precluded by the Eleventh Amendment. In addition, Plaintiff has failed to present any evidence that Bennett discriminated against him due to his disability in violation of his Fourteenth Amendment rights. Accordingly, summary judgment is appropriate on all claims arising under the ADA and Fourteenth Amendment.

### III. Plaintiff's Claims under Georgia Law Fail

Plaintiff alleges that "the actions of the individual Defendants violated [] Plaintiff's rights under the Constitution of the State of Georgia, and also constituted negligence under Georgia law." Dkt. No. 1, ¶ 24.[4] Plaintiff's state law claims

---

[4] The Court notes that Plaintiff only set forth state law claims against the individual defendants and did not argue or plead any claims against the individual defendants in their official capacities. Plaintiff failed to address any state law claims asserted against Davies and Bennett in their official capacities in his Opposition to Defendant's Motion for Summary

against Davies and Bennett in their individual capacities fail because the Georgia Constitution does not provide Plaintiff with a right of action.  See Draper v. Reynolds, 278 Ga. App. 401, 403 n.2 (Ga. Ct. App. Mar. 23, 2006) (citing Howard v. Miller, 222 Ga. App. 868, 871 (Ga. Ct. App. Sep. 24, 1996) (explaining that Georgia does not have an "equivalent to 42 U.S.C. § 1983, which provides a cause of action for damages against state officers in their individual capacities for certain unconstitutional acts.")).

Here, Plaintiff's claims arising under the Georgia Constitution are leveled against Davies and Bennett in their individual capacities. In addition, Davies and Bennett are immune to liability for common law negligence under the doctrine of official immunity.  The doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacity. Here, immunity protects Davies and Bennett "from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with

---

Judgment.  When this occurs, the Court may deem such claims abandoned.  See Bute v. Schuller Int'l, Inc., 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (deeming a claim abandoned where the plaintiff failed to respond to the defendant's motion for summary judgment on the claim).  Accordingly, the Court will only discuss the state law claims set forth against Bennett and Davies in their individual capacities.

malice or intent to injure." <u>Cameron v. Lang</u>, 274 Ga. 122, 124(1), 549 S.E.2d 341 (2001). There is no dispute that Davies and Bennett acted within their discretionary authority. Furthermore, the record is devoid of evidence indicating willfulness, malice, or corruption. Therefore, Davies and Bennett are entitled to immunity regarding Plaintiff's negligence claims.

Given that Georgia case law on this point is clear, Plaintiff's claims against Davies and Bennett in their individual capacities fail as a matter of law. Accordingly, Davies and Bennett are entitled to summary judgment.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Dkt. No. 23) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter the appropriate judgment and to close this case.

**SO ORDERED**, this 30TH day of September, 2016.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA